UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
::
::
MARK CROWDER,                                :      05 CV 2556 (ARR)
:
            Petitioner,            :      NOT FOR
:      PUBLICATION
:
    -against-                      :
:      OPINION
SUPERINTENDENT GARY GREEN,        :      AND ORDER
:
            Respondent.           :
:
------------------------------------------------------------- X

ROSS, United States District Judge:

Petitioner pro se, Mark Crowder ("Mr. Crowder" or "petitioner"), filed the instant

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 16, 2005, claiming that

(1) he was denied his due process right to a fair trial because the prosecutor referred to petitioner

by his nickname, "Killer," throughout the trial and improperly commented on petitioner's

decision to exercise his right to a trial; (2) he was denied his right to confrontation and his due

process right to a fair trial because the trial court permitted the prosecution to cross-examine

petitioner about an uncharged crime; (3) he was denied his right to effective assistance of trial

counsel. For the reasons stated below, the court denies the instant petition for a writ of habeas

corpus.

## BACKGROUND

Following a jury trial, petitioner was convicted on October 16, 2001 of murder in the

second degree, attempted murder in the second degree, and criminal possession of a weapon in

the second degree. Petitioner was sentenced to concurrent terms of 25 years to life for murder, 6

1

to 12 years for attempted murder, and 4½ to 9 years for weapons possession. Specifically, petitioner and his co-defendant were convicted of committing a shooting in a Brooklyn apartment building on March 20, 1997, which resulted in the death of one victim and injury to another. At trial, petitioner presented evidence suggesting that he and his co-defendant acted in self-defense.

Petitioner appealed to the Appellate Division, which affirmed the conviction by order dated December 1, 2003. People v. Crowder, 767 N.Y.S.2d 805 (2d Dep't 2003). The Appellate Division explicitly stated that petitioner had not preserved for appellate review his "contention that he was deprived of a fair trial based on the prosecutor's repeated references to his nickname, 'Killer.'" Id. The court went on to state that "[i]n any event, while there may have been some instances of improper use of the defendant's nickname, reference to the defendant's nickname was relevant to his identity as one of the shooters . . . . The defendant was generally known by his nickname and was identified by his nickname by an eyewitness and one of the victims." Id. (citations omitted). The court summarily dismissed petitioner's remaining claims as harmless or lacking merit. Id. Thereafter, petitioner sought leave to appeal to the Court of Appeals, which was denied by order dated March 5, 2004. People v. Crowder, 2 N.Y.3d 739 (2004).

Petitioner's conviction became final on approximately June 5, 2004, ninety days after the Court of Appeals denied leave to appeal. Mr. Crowder filed his petition for a writ of habeas corpus on May 16, 2005, well within the one-year limitations period. Thus, his petition is timely and properly before this court.

## DISCUSSION

I.    AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996,

2

established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[C]learly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Supreme Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court...should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required...the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal

quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)); see also DeBerry v. Portuondo, 403 F.3d 57, 66-67 (2d. Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 178 (2d Cir. 2003). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)).

II.     Procedural Default

Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama v. Commissioner of Correctional Services, 235 F.3d

4

804, 809 (2d Cir. 2000) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Harris v.

Reed, 489 U.S. 255, 262 (1989)). In order for federal review to be procedurally barred, the state

court's reliance on state law must be "clear from the face of the opinion." Id. (internal quotation

marks and citation omitted). The Second Circuit held in Fama that where the state court uses

language such as "the defendant's remaining contentions are either unpreserved for appellate

review or without merit" the claim is subject to federal review. Id. at 810-11. The court's

decision in Fama did not overturn prior rulings, however, that a state court decision constitutes a

procedural default where the court stated that a claim was "not preserved for appellate review"

before ruling "in any event" on the merits. Id. at 810 n.4.

 Where a state court rules against a petitioner on procedural grounds, the petitioner faces a

"procedural default" precluding federal habeas review. A procedural default may be excused by

a federal court, however, if the petitioner demonstrates either cause for the default and actual

prejudice from the alleged violation of federal law, or that the failure to consider the claims will

"result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A miscarriage of

justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in

the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

"To be credible, such a claim requires petitioner to support his allegations of constitutional error

with new reliable evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298,

324 (1995). A petitioner establishes actual innocence by demonstrating that "in light of all the

evidence, it is more likely than not that no reasonable juror would have convicted him." Dixon

v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks and citations omitted).

III. Petitioner's Claims

## A. *Prosecutorial Misconduct*

Petitioner claims that the prosecution violated his due process rights to a fair trial by (1) repeatedly referring to petitioner by his nickname, "Killer," throughout trial and (2) "chastising" petitioner during closing arguments for exercising his right to trial. As the analysis below indicates, neither claim is entitled to habeas relief.

### 1. *Improper Use of Defendant's Nickname*

Petitioner presented this claim to the Appellate Division, which ruled that petitioner had not preserved for appellate review his "contention that he was deprived of a fair trial based on the prosecutor's repeated references to his nickname, 'Killer.'" Id. The court went on to state that "[i]n any event, while there may have been some instances of improper use of the defendant's nickname, reference to the defendant's nickname was relevant to his identity as one of the shooters . . . . The defendant was generally known by his nickname and was identified by his nickname by an eyewitness and one of the victims." Id. (citations omitted). More specifically, the court held that petitioner failed to preserve this issue for review because he failed to lodge a contemporaneous objection to the prosecution's repeated reference to his nickname during trial. See id. (citing N.Y. Crim. Proc. Law § 470.05 (2)). Under Fama, the state court's ruling constitutes a clear and unambiguous reliance on the procedural violation as a basis for its decision. See 235 F.3d at 810 n.4.

However, the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts. See James v. Kentucky, 466 U.S. 341, 348-49 (1984). As the Second Circuit has recognized, New York's contemporaneous objection rule is firmly established and regularly followed by state courts. See

Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). New York's contemporaneous objection rule requires both that an objection be lodged at the time of the ruling or "at any subsequent time when the court had an opportunity of effectively changing the same .... [and] is sufficient if the party made his position with respect to the ruling or instruction known to the court." N.Y.Crim. Proc. Law § 470.05(2). Under state law, timeliness as well as specificity are required for the preservation of claims of error. See People v. Tevaha, 84 N.Y.2d 879 (1994) (holding that a general objection, which fails to specify the claimed error, is insufficient to preserve an issue for appellate review). In its decision, the Appellate Division, in reliance on New York Criminal Procedure Law § 470.05(2), held that the petitioner had similarly failed to preserve his claim that the prosecution improperly and prejudicially called him by his nickname throughout trial. Petitioner is thus procedurally defaulted from seeking federal habeas review on this claim unless he demonstrates either cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice would result from the court's refusal to hear the claim. See Coleman, 501 U.S. at 750.

Petitioner has neither attempted to demonstrated cause for the default nor alleged that he is "actually innocent." In light of the fact that petitioner is proceeding pro se, however, the court will entertain the claim that the procedural default should be excused because petitioner's trial counsel was ineffective for failing to contemporaneously object to the prosecution's use of petitioner's nickname, a claim raised in Mr. Crowder's petition. As explained below, counsel was not ineffective for failing to object. In any event, petitioner could not establish prejudice as required to excuse the procedural default. "To satisfy the prejudice prong, petitioner must show not merely a possibility of prejudice, but that the alleged error worked to his actual and

substantial disadvantage." Capiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1988) (internal quotation marks and citation omitted). Here, petitioner is unable to show even a possibility of prejudice in light of the overwhelming evidence of his guilt. Eyewitness testimony, multiple statements made by petitioner himself, and ballistics evidence established beyond a reasonable doubt petitioner's guilt for intentional murder, attempted murder, and weapons possession.

Second, petitioner has not argued that failure to hear his claim will result in a fundamental miscarriage of justice. Coleman, 502 U.S. at 752. The Supreme Court has stated that a miscarriage of justice occurs in an "extraordinary" case as where a constitutional violation has "probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 322-24 (1995). Petitioner has not presented any new evidence and, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citing Schlup, 513 U.S. at 324)). Nor has the petitioner demonstrated a miscarriage of justice by pointing to errors that call into question the validity of the trial itself, such as violation of the right against double jeopardy. See Washington v. James, 996 F.2d 1442, 1450 (2d Cir.1993).

Since petitioner cannot show cause for the procedural default and resulting prejudice, nor can he show that a miscarriage of justice would result from the failure to consider the defaulted issue, the claim is procedurally barred and cannot be reviewed. Accordingly, Mr. Crowder's claim that the prosecution improperly referred to his nickname at trial shall be dismissed without reaching the merits. See Grey v. Hoke, 933 F.2d 117, 121 (2d Cir.1991).

2. *Improper Reference to Defendant's Exercise of His Right to Trial*

Petitioner also claims that he was denied his due process right to a fair trial because the

8

prosecution improperly criticized petitioner for exercising his right to a jury trial. On direct appeal, the Appellate Division dismissed petitioner's claim as either without merit or harmless. Because the claim was adjudicated on the merits, the court applies the deferential standard appropriate under § 2245(d). Under that deferential standard, the court concludes that the Appellate Division's determination was neither contrary to, nor involved an unreasonable application of, federal law.

Prosecutorial misconduct may violate a defendant's due process rights if it involves "egregious conduct." United States v. Shareef, 190 F.3d 71, 78 (2d Cir.1999) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)). The prosecutor's comments must be examined in the context of the trial as a whole. United States v. Melendez, 57 F.3d 238, 241 (2d Cir.1995) (citations omitted). Petitioner thus bears a significant burden in order to merit habeas relief. He must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted). In making such an evaluation, a court should look to three factors: "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of misconduct." Id. (collecting cases).

Petitioner claims that, during summation, the prosecutor improperly attacked petitioner for exercising his trial rights. After reviewing the summation and the entire trial record, this court agrees with the Appellate Division and finds petitioner's claim wholly without merit. During summation, the prosecutor asked the jury to do "something that Mr. Crowder wouldn't do. . . . hold him responsible for his actions." Trial Transcript at 1104. Read alone or in light of

the entire trial record, this statement does not suggest the prosecution was attacking petitioner's decision to go to trial. Instead, the prosecution was simply responding to petitioner's justification defense and asking the jury to hold him responsible for intentional murder. Thus, the court concludes that the comments were in no way improper. Given that the comments do not rise to the level of "egregious conduct" required to establish a due process violation for prosecutorial misconduct, the court holds that the Appellate Division's dismissal of the claim was neither contrary to, nor involved an unreasonable application of, federal law. Consequently, petitioner's claim is not entitled to habeas relief.

## B. *Evidence of Uncharged Crimes*

Petitioner also alleges that the trial court improperly permitted the prosecution to cross-examine petitioner about uncharged crimes in violation of his due process and confrontation rights. On direct appeal, the Appellate Division dismissed petitioner's claim as either without merit or harmless. Because the claim was adjudicated on the merits, the court applies the deferential standard appropriate under § 2245(d). Under that deferential standard, the court concludes that the Appellate Division's determination was neither contrary to, nor involved an unreasonable application of, federal law.

Challenges to state evidentiary rulings do not ordinarily provide the basis for habeas corpus relief because it is not the province of a federal habeas court to re-examine state court determinations on state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Only where evidence "is so extremely unfair that its admission violates fundamental conceptions of justice" will a trial court's evidentiary ruling be reviewed by a habeas court. Dowling v. United States, 493 U.S. 342, 352 (1990); Roldan v. Artuz, 78 F.Supp.2d 260, 276 (S.D.N.Y.2000) ("Issues

regarding the admissibility of evidence in state court ... are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." (quotation marks and citation omitted)). Evidence will reach this threshold of unfairness only in the rare circumstances where it is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir.1992)). The petitioner bears the "heavy burden" of establishing fundamental unfairness. Roldan, 78 F.Supp.2d at 276.

Petitioner complains that the trial court erroneously admitted evidence of petitioner's uncharged crime—an alleged shooting of an individual—during his cross-examination. Petitioner's attorney, however, questioned petitioner on direct about whether he had previously committed an assault, and petitioner replied that he had not. Trial Transcript at 942. The trial court agreed that defense counsel opened the door to the cross-examination on petitioner's uncharged crimes, but limited the prosecution to ask only "whether [Mr. Crowder] is familiar with the allegation that he assaulted this particular individual." Id. at 947. Under New York law, evidence of uncharged crimes may be properly admitted when "the defendant clearly open[s] the door to the complained-of cross-examination by interjecting the uncharged crimes during his direct examination as an integral component of his trial strategy." People v. Watts, 546 N.Y.S.2d 906 (2d Dep't 1989); see also People v. Gagliardo, 762 N.Y.S.2d 890 (2d Dep't 2003); People v. Ayala, 560 N.Y.S.2d 656 (2d Dep't 1999). Thus, the Appellate Division's determination that the trial court properly allowed cross-examination on petitioner's uncharged assault was a straightforward and correct application of state law. Where a state court ruling was not erroneous

11

under state law, a petitioner cannot establish a federal constitutional violation unless he challenges the constitutionality of the state law itself. See, e.g., Cunningham v. Bennett, 02 Civ. 4635, 2005 WL 1162475, *6 (May 16, 2005) (concluding that admission of evidence of defendant's uncharged crimes was appropriate under state law and thus, admission did not violate the Constitution). Petitioner articulates no challenge to the constitutionality of the underlying state evidentiary rule and thus has not established any error of constitutional magnitude.

Regardless, in light of the overwhelming evidence against petitioner, admission of the uncharged crimes evidence "viewed objectively in light of the entire record before the jury" would not have "remove[d] a reasonable doubt that would have existed on the record without it." Dunnigan, 168 F.3d at 125.

### C. *Ineffective Assistance of Trial Counsel*

Petitioner argues that he was denied effective assistance of counsel on two bases. Specifically, he claims trial counsel was ineffective for (1) failing to lodge contemporaneous objections to the prosecution's use of petitioner's nickname throughout trial and (2) opening the door to the prejudicial evidence of petitioner's uncharged crimes. Petitioner presented both of these claims on direct appeal. The Appellate Division considered these claims and denied them on the merits. Thus, the court is precluded from granting habeas relief on these claims unless the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability

12

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984).

In analyzing a claim that counsel's performance fell short of constitutional standards, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689). As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

466 U.S. at 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689.

Petitioner's first claim is that counsel was ineffective for failing to object to the prosecution's repeated reference to petitioner's nickname, "Killer," throughout the trial. In his appellate brief, petitioner argued that "[i]t should have been obvious to defense counsel that appellant's prejudicial nickname could become an issue and it should have been equally apparent that, for the most part, using that nickname would serve no legitimate purpose." Appellate Brief at 50-51. In fact, defense counsel did realize that petitioner's nickname would be an issue and addressed it immediately in his opening statement. He cautioned the jury against assuming that petitioner's nickname related to the crime in the case. Trial Transcript at 70. The prosecution,

13

however, properly used petitioner's nickname in many instances because it was necessary for identification purposes during the examination of witnesses who only knew petitioner as "Killer." Therefore, it is likely that defense counsel failed to object the prosecution's use of petitioner's nickname because he knew he had no basis for doing so. In its cross-examination of petitioner, the prosecution questioned him about the origins of his nickname. Petitioner explained that he was given the nickname by the person who taught him how to rap. Id. at 955. Defense counsel did not object to the prosecution's line of questioning here, possibly because petitioner's answer was beneficial to his case—it suggested that his nickname was not connected to any prior criminal acts. Defense counsel later reminded the jury in his summation that petitioner's nickname "had to do with the making of ... demos or something having to do with rap music." Id. at 1051. Moreover, although defense counsel did not object to the prosecution's use of petitioner's nickname as prejudicial, he did object to the prosecution's arguably most egregious use of it. In summation, the prosecution stated: "You know this wasn't self-defense. You know that it was a man named Killer.... [D]o you really think he got his nickname Killer in a rap song?" Id. at 1092. Defense counsel objected to the prosecution's statement as speculative, but the court overruled the objection. Id. Based on the trial record, defense counsel appeared to have made a strategic decision not to object to the prosecution's use of petitioner's nickname except when the prosecution actually speculated that the nickname was connected to petitioner's alleged behavior. Under Strickland, such a strategic choice is "virtually unchallengeable." 466 U.S. at 690.

Even if there is some question with regard to counsel's decision not to object to the prosecution's repeated use of petitioner's nickname, petitioner has failed to satisfy the second

14

prong of the Strickland inquiry. Petitioner has not established that but for counsel's error in failing to object, the result of his case would have been different. In his appellate brief, petitioner argued that defense counsel's failure to object "permitted [the prosecution] to undermine appellant's credibility and, thereby his entire defense." Appellate Brief at 52. Given that many references to petitioner's nickname were proper and defense counsel made his own strategic references to defendant's nickname, the prejudicial effect of any improper references is minimal relative to the overwhelming evidence of petitioner's guilt. Thus, applying AEDPA's deferential standard of review, the court concludes that habeas relief is not warranted on this claim.

Petitioner's second claim is that defense counsel was ineffective for opening the door to cross-examination by the prosecution about petitioner's uncharged crimes. In his appellate brief, petitioner argued the defense counsel's decision to question petitioner about whether he previously had committed robbery or assault added no value to his case. Appellate Brief at 53. Moreover, he argued that defense counsel misunderstood the law when he failed to recognize that his questioning of the defendant would open the door to cross-examination about uncharged crimes by the prosecution. Id. at 54. The court disagrees with petitioner's assessment of defense counsel's performance. Petitioner's testimony about his criminal history was not wholly irrelevant or unnecessary. By asking whether petitioner had ever committed an assault, defense counsel elicited what he reasonably believed was relevant testimony supporting his client's self-defense theory. Moreover, defense counsel did not misunderstand the law, but rather made reasonable arguments against the prosecution's position. He also zealously represented his client's interest by objecting to the prosecution's line of questioning and seeking a curative instruction. Trial Transcript at 948. The trial court subsequently permitted the prosecution to

15

cross-examine petitioner about the uncharged crime, but limited the scope of the questioning. Id. at 947. Although defense counsel's decision to ask the defendant about his criminal history was questionable trial strategy, the court cannot conclude that defense counsel's performance fell below reasonable professional standards.

Even if defense counsel's performance fell below reasonable professional standards, petitioner has not satisfied the second prong of Strickland. Petitioner has failed to establish that defense counsel's alleged error prejudiced his case to such an extent that the result would have been different otherwise. As discussed above, the trial court limited the scope of the prosecution's questioning about the uncharged assault. Petitioner, however, provided inconsistent answers to the only question the prosecution was permitted to ask: "whether [Mr. Crowder] is familiar with the allegation that he assaulted this particular individual." Id. at 947, 950, 953. Petitioner's inconsistent statements clearly compounded any prejudice caused by the questioning about petitioner's uncharged crimes. However, petitioner's inconsistent testimony cannot be attributed to counsel's alleged ineffectiveness. The prejudice was also minimized because the trial court provided a limiting instruction, at defense counsel's request, which directed the jury to consider the uncharged crime "solely for assessing the defendant's credibility" and not "for any other purpose." Trial Transcript at 1114. Petitioner has thus failed to establish that defense counsel's alleged error had a material effect on the outcome of the trial. Given that petitioner cannot satisfy either the first or second prongs of Strickland, habeas relief is not warranted on this claim.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims because the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated:     October 18, 2005
           Brooklyn, New York